NO. 07-08-0337-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 6, 2009
_____

ANGELA OBALLY,[1] APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-412208; HONORABLE BRADLEY S. UNDERWOOD, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Angela Obally, appellant, was convicted of possession with intent to deliver methamphetamine (meth) of at least 400 grams or more.[2] Pursuant to appellant's election, the trial judge assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for 20 years. Appellant appeals via three issues. We affirm.

---

[1] The spelling of appellant's name follows the spelling found in the trial court's record.

[2] See TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp. 2009).

Factual and Procedural Background

In August 2004, appellant was residing at 9007 Alcove in Lubbock County. Robin Warren began staying at appellant's home during August 2004. According to the record, Warren was invited to come to the home to help appellant "cook" some meth from a Coleman camp fuel can. The record is clear that appellant took the camp fuel into the home. Warren testified that appellant told her that Phil, who was identified as appellant's dealer, gave her the fuel can. Appellant, however, testified that she found it in the road on her way home from work. Appellant testified that she went to bed, after returning home, and awoke to find Warren and one of two males trying to "gas" the meth while Warren's infant child was in the room. This led to a disagreement and appellant left the home. Warren, on the other hand, stated that the entire group was involved in the "cooking" of the meth but that they ran into difficulty and appellant took a portion of the liquid and left with it. Appellant left in Warren's car and went to the home of Audra Bran.

On August 13, 2004, Detective Eric Harris of the Lubbock Police Department was attempting to find Warren regarding an outstanding felony warrant and some forgery charges. Harris had received a tip that Warren's car was seen at a rural residence in northwest Lubbock County, where Audra Bran resided. Harris proceeded to the residence and saw Warren's car in the driveway. Because there appeared to be several people at the residence, Harris called for backup and blocked the driveway with his vehicle. While awaiting backup, Harris noticed that individuals would come out of the house and look at him and go back into the home. Bobby Bran, the owner of the home, eventually came out and gave Harris and the other officers, who had arrived at the scene, permission to enter.

2

Once inside, Harris was not able to find Warren, however, there was a strong chemical smell that Harris said was associated with meth "cooking." Appellant came forward and informed Harris that she had driven Warren's car to the house. Further, appellant advised Harris that Warren was at appellant's home on Alcove. Appellant eventually drove back to the Alcove address with Harris.

The testimony at trial was differing about what appellant said to Harris on the drive back to her home. Harris recounted that appellant advised him that narcotics might be present at the house. Appellant testified that she told Harris that she had found a "meth lab" in the road while driving home. The record reflects that the "meth lab" referred to by appellant was actually the can of Coleman camp fuel. Upon arriving at appellant's home, appellant signed a consent to search form. Appellant hid in the car while Harris and other officers went into the house and arrested Warren. While at the house, Harris called for officers from the drug task force to be dispatched to the scene. Upon searching the house, the officers found drug paraphernalia, including syringes, spoons with residue on them, and items generally used in the production of meth. Additionally, officers found two containers of meth inside a freezer, one in a small Mason jar and the other in a blue tupperware pitcher. These were field tested and they tested positive for meth. Warren and another individual, who did not testify at trial, were arrested that day. Appellant was arrested at a later date.

At the trial, Warren testified for the State and gave an account that identified appellant as the person who had the "meth lab" and claimed that she had recruited Warren and her male companion to come over and assist in the meth "cook." Further, Warren

3

identified a letter that appellant had sent to Warren while both were in jail. The letter, which was introduced into evidence, contained admissions by appellant that she was sorry that she got Warren involved in the meth situation and that appellant took the blame for the meth that was located in the house. The State also provided the testimony of Randy Nelson, an investigator for the State, who is a handwriting expert. Nelson testified that, based upon his examination of a handwriting exemplar provided by appellant, the letter in question was written by appellant and did not appear to be altered. The State's chemist testified that the amount of meth found at the house was 1.17 kg and that the solution was in a base state, meaning that the liquid had not been gassed to extract the meth into a powder form. Further, the chemist stated that the solution contained less than 1 percent concentration of meth.

Appellant testified in her own behalf and claimed that the only meth in the house was what had been made with the Coleman camp fuel, minus the half of it that she took to Audra Bran's house. Appellant testified that Warren and the two males had gassed the meth she left. Further, appellant stated that she had no knowledge of the meth solution found in the freezer in a Mason jar or plastic Tupperware pitcher. Additionally, appellant attempted to contradict the testimony of Harris by saying that she told him about finding the Coleman fuel can on her way home from work and that Harris was the one that told her to hide in his car when he entered the house. Finally, appellant claimed that her letter to Warren had been altered to reflect that she was responsible for the meth in the house.

The jury returned a verdict of guilty to the charge of possession of meth with intent to distribute. Appellant perfected her appeal and alleges that the evidence is legally

4

insufficient to link her to the meth discovered at the Alcove address; there is insufficient corroboration of the testimony of the accomplice, Warren; and the evidence is factually insufficient to prove possession of the meth with intent to distribute. Disagreeing with appellant, we will affirm.

Corroboration of Accomplice Testimony

We will first address appellant's contention that the evidence was insufficient to corroborate the testimony of Robin Warren, an accomplice as a matter of law. The record reflects that there was no contested issue about Warren's status as an accomplice as a matter of law and, in fact, the trial court so charged the jury. The standard by which we review the corroboration of accomplice witness testimony requires that the reviewing court eliminates all of the accomplice testimony from consideration and then examines the remaining portion of the record to see if there is any evidence that tends to connect appellant to the commission of the crime. See Castillo v. State, 221 S.W.3d 689, 691 (Tex.Crim.App. 2007) (citing Solomon v. State, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001)). The corroborating evidence does not need to be sufficient to establish appellant's guilt, rather it need only tend to connect appellant to the offense. Id. There simply must be some non-accomplice evidence which tends to connect appellant to the commission of the offense alleged in the indictment. Id. However, the mere presence of appellant at the scene of the crime is insufficient corroboration. See Malone v. State, 253 S.W.3d 253, 257 (Tex.Crim.App. 2008). In the final analysis, "the issue then is not how an appellate court would independently assess the non-accomplice evidence but whether a rational fact-finder

could conclude that the non-accomplice evidence 'tends to connect' appellant to the offense." Simmons v. State, 282 S.W.3d 504, 509 (Tex.Crim.App. 2009).

When we apply the standard of review to the record, we find that appellant admitted to living at the Alcove address where the meth in question was found. The evidence further reflected that, while Harris was driving appellant from the Bran residence to her house on Alcove, appellant admitted to Harris that he might find narcotics at the residence. While it is true that appellant denied making the statement, it was up to the fact finder to resolve that conflict and we must defer to the resolution adopted by the fact finder. See Evans v. State, 202 S.W.3d 158, 163 (Tex.Crim.App. 2006). Further, there was the physical evidence seized at the residence, including syringes, spoons with residue, the supplies needed to manufacture meth, and the actual meth. Then, there is the letter written by appellant to Warren while both were incarcerated. In the letter, appellant states: 1) that the blame for the meth lab being there to begin with was hers; 2) that she should have never had the "stuff" there; and 3) that she should have told Warren that it was there. This admission is crucial because the record is clear that Warren knew about the Coleman fuel can, so it is a reasonable inference that the "stuff" that appellant was referring to in the letter was the meth that was found in the freezer in a Mason jar and plastic Tupperware pitcher. Accordingly, the jury could, following the court's charge, rationally find that there was independent evidence that tended to connect appellant to the commission of the offense. See Simmons, 282 S.W.3d at 509. Therefore, we overrule appellant's issue regarding corroboration of the accomplice witness testimony.

6

Appellant's next two issues challenge the legal sufficiency of certain aspects of the State's proof and factual sufficiency of other aspects of the State's proof. Because both the legal and factual sufficiency of the evidence are challenged, we must first address the legal sufficiency challenge. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). If we find the evidence legally sufficient, we will then address the factual sufficiency issue. Id. at 132.

Legal Sufficiency

Appellant's first issue challenges the legal sufficiency of the evidence tending to connect appellant with the meth found at the Alcove address. In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

In the case before the court, appellant was not in exclusive possession of the house where the meth was found. Therefore, we must view the evidence that would link appellant

7

to the contraband to determine whether a rational juror could have found appellant guilty beyond a reasonable doubt. See Poindexter v. State 153 S.W.3d 402, 406 (Tex.Crim.App. 2005). The record reflects that appellant was the "owner" of the home at the Alcove address.[3] The record further reflects that Warren and the two males had been at the home for a day or so prior to the arrest of Warren on the day that the meth in question was discovered. During testimony of both appellant and Warren, the only meth discussed as having been brought into the home was from the "meth lab" that was the Coleman camp fuel can. The meth discovered in the freezer was that for which appellant was indicted. Harris testified appellant admitted there might be narcotics in the house and, while appellant denied making the statement, it was for the jury to resolve that conflict. See id. There was drug paraphernalia, in the form of syringes and burnt spoons with residue on them, found in the house. There was meth manufacturing paraphernalia in the form of tubing, glass beakers and jars, and pickling salt found in the house. Finally, there is the admission of appellant regarding the "stuff" that appellant said should not have been there and that she should have told Warren about. Inasmuch as Warren knew about the Coleman camp fuel can, the only other item appellant's admission could refer to is the meth found in the freezer. All of this evidence could lead a rational trier of fact to find that appellant exercised control, management, or care over the meth in question and that appellant knew the matter was contraband. Id.

---

[2] The record is unclear about whether or not appellant held a deed to the property, however, appellant's testimony was that she was trying to buy the house.

Appellant contends that this court should resolve this issue in her favor based upon the case of Higgins v. State, 515 S.W.2d 268 (Tex.Crim.App. 1974). In Higgins, the house in question was a large two story structure consisting of 10 rooms, a basement, and hallways. There were 10 people in the house at the time of the seizure of contraband. The only evidence linking the appellant in Higgins to the house was two letters found in the dining room that were over five and a half months old. Plus, there were personal belongings of other persons found in the house. These facts distinguish Higgins from the case at bar. Here, the unequivocal testimony was that appellant was in some ownership or possessory relationship with the house. Additionally, there is the issue of appellant's admission, which alters the factual framework. We do not feel the Higgins case controls our review of the sufficiency of the evidence in the case before us.

When all of the evidence is viewed in the light most favorable to the verdict, we cannot say the jury was acting irrational when it found appellant guilty beyond a reasonable doubt. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly, appellant's first issue is overruled.

Factual Sufficiency

Appellant's final issue is that the evidence is factually insufficient to support a finding that appellant possessed at least 400 grams of meth with intent to distribute. When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See

9

Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has recently declared that, when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner against a "hypothetically correct jury charge." Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

The essence of appellant's contention is that, because appellant offered evidence that is inconsistent with her guilt, when we view all of the evidence in a neutral light, the evidence becomes insufficient to support the jury's determination of guilt. Such might be the case if the appellate court was directed to re-weigh the evidence, however, that is not our charge. Watson, 204 S.W.3d at 417. Rather, we must point to some objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury's verdict. Appellant's assertion that the conflict in the testimony about the Coleman camping fuel can does nothing to demonstrate that the evidence contradicts the jury's verdict. To begin with, appellant's analysis completely ignores her confession of

10

guilt in the letter written to Warren.  Then, appellant's analysis ignores the fact that the jury has heard all of this evidence and resolved the conflict against her.  We cannot simply decide to ignore the jury's determination of the factual conflicts.  Id.  Our review of the evidence in a neutral light convinces us that the jury acted rationally when it found appellant guilty beyond a reasonable doubt.  Accordingly, appellant's final issue is overruled.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.